FARMERS DEPOSIT BANK OF BRANDENBURG, Appellant,

v.

DEPARTMENT OF BANKING AND SECURITIES, Commonwealth of Kentucky; Leonard B. Marshall, Jr.; Commissioner; J.D. Tobin, Jr.; J.D. Tobin, Sr.; Kenneth Heavrin; Leroy Humphrey; James Michael Jones; and David Ridenour, Meade County Bank, Appellees.

Court of Appeals of Kentucky.

April 6, 1984.

Discretionary Review Denied by Supreme Court May 23, 1984.

R. Van Young, Lisabeth H. Abramson, Greenebaum, Doll & McDonald, Louisville, for appellant.

George E. Dudley, Charles S. Cassis, R. James Straus, Elizabeth P. DeVine, Brown, Todd & Heyburn, Louisville, and Edward F. Prichard, Jr., Lexington, for appellees, J.D. Tobin, Sr., J.D. Tobin, Jr., Kenneth Heavrin, Leroy Humphrey, James Michael Jones and David C. Ridenour.

James Baker, Commonwealth of Ky., Frankfort, for appellee, Dept. of Banking and Securities.

Before CLAYTON, DUNN and HOWARD, JJ.

CLAYTON, Judge.

The Farmers Deposit Bank of Brandenburg appeals from a judgment of the Franklin Circuit Court affirming the decision of the Department of Banking and Securities to approve the bank charter application of the proposed Meade County Bank (the "proposed bank"). An application for a Bank Charter and Federal Deposit Insurance (the "application") was filed with the Department of Banking and Securities (the "Department") on December 9, 1982. Named as incorporators in the application are the appellees: J.D. Tobin, Jr.; J.D. Tobin, Sr.; Kenneth Heavrin; Leroy Humphrey; James Michael Jones; and David Ridenour. A notice of opposition to the application was filed with the Department that same month by the appellant, Farmers Deposit Bank of Brandenburg (the "Farmers Deposit Bank" or "Farmers").

Pursuant to the instructions of the Commissioner of the Department, an office review and field investigation of the applica-

tion were conducted by a banking investigator for the Department. The investigator's report, dated January 10, 1982, includes a review of the proposed bank's financial history and condition, proposed management, public convenience and advantage, reasonable probability for successful operation, and capital requirements. The report concludes that "[a]ll factors addressed by the application and investigation thereof appeared favorable."

On March 7, 1983, a public hearing was held before a hearing officer of the Department as required by KRS 287.061. Among those present and testifying for the proposed bank were members of the group of incorporators, the extension agent and property valuation administrator of Meade County, and a professor of economics from the University of Kentucky, L. Randolph McGee. The Farmers Deposit Bank submitted the testimony of its President, and two certified public accountants, Hamilton and Stewart. The hearing officer subsequently entered Findings of Fact and Conclusions of Law recommending issuance of a bank charter. To quote a portion of language of the hearing officer, "[t]he projections favorable, proposed management has experience, and there is community support." The Commissioner of the Department subsequently adopted the hearing officer's recommendations. Farmers Deposit Bank appealed the Commissioner's decision to Franklin Circuit Court, which affirmed the Commissioner's ruling.

Farmers Deposit Bank now seeks reversal of the lower court's decision arguing that (1) the proposed bank's application does not meet the criteria of KRS 287.-050(1); (2) the ownership of the Tobins in the proposed bank contravenes KRS 287.-030; and (3) the approval of the proposed bank's application is arbitrary and capricious given the lack of significant or substantial changes in Meade County since 1976, the year in which the Department disapproved an application for a new bank in Meade County.

We disagree and are unable to find any deficiency in the application or applicants with respect to KRS 287.050(1), KRS 287.030, or the Department's prior disapproval. On the contrary, we hold that there is substantial evidence that the proposed bank has a reasonable assurance of sufficient volume of business to be successful and that the public convenience and advantage will be promoted by the opening of the proposed bank. KRS 287.050(1). Furthermore, the aggregate ownership of eighty percent (80%) of the capital stock of the First State Bank of Irvington by J.D. Tobin, Sr., and J.D. Tobin, Jr., father and son incorporators of the proposed bank, does not prevent their individual acquisition of an aggregate of sixty percent (60%) of the capital stock in the proposed bank. The definition of "person" as found in KRS 287.030 does not include the familial father/son relationship for the purposes of attribution of stock ownership. Therefore, since neither of the Tobins as individuals owns fifty percent (50%) of the Bank of Irvington nor the proposed bank, we hold there to be no violation of KRS 287.030. Finally, after thoroughly reviewing the record, we hold that there is ample evidence of "significant" or "substantial" changes justifying approval of the application. *Williams v. Cumberland Valley National Bank*, Ky.App., 569 S.W.2d 711 (1978).

I.

We begin with an examination of the three statutory elements found in KRS 287.050. Both parties have stipulated the satisfaction of the first of these criteria, the "financial standing, moral character and capacity of the incorporators," KRS 287.050. It is the second and third element, the reasonable assurance of success and the public convenience and advantage which the appellant draws into contention. The appellant's arguments regarding the second element of KRS 287.050(1), the reasonable assurance of sufficient volume of business, fall neatly into two categories. The first of these categories contains expert financial testimony on deposit growth and projected profits. The second one in-

cludes general testimony on relevant economic and demographic factors.

Distilled to its essence, the testimony of the appellant's first financial expert, Hamilton, is that the proposed bank cannot be successfully operated at the 8.4% historical deposit growth rate of Meade County nor even at the more favorable deposit growth rate of 10%, the total deposit growth rate in the tri-county area of Meade, Breckinridge, and Hardin Counties. Stewart, the second of the appellant's financial experts, contends that the proposed bank incorporators are overly optimistic in their projections on deposits, spread between return of assets and cost of funds, and loan losses. Farmers Deposit Bank additionally criticizes the testimony of the appellees' financial expert, Professor McGee, questioning the soundness of his reliance on a 12.6% personal income growth rate and "penetration ratio" estimates to project deposit growth of the proposed bank.

We have reviewed the appellees' financial projections and the bank investigator's and hearing officer's comments concerning them. None of the appellant's expert financial testimony, nor arguments founded thereon, has convinced us that these projections are improperly based, overly optimistic, or unsound. Professor McGee's reliance on the Meade County personal income growth rate to determine deposit growth is not unwarranted given the unique nature of the current banking climate in Meade County. As the record repeatedly reveals, Meade County has an unusually low 24% penetration ratio (bank deposits as a percentage of personal income), less than half the Kentucky average of 52%. While some of the discrepancy between the two ratios can be explained by the banking necessities of Meade countians who maintain accounts in financial institutions in adjacent Hardin and Breckinridge counties, the remaining portion of the ratio discrepancy appears attributable to the inefficiency of Farmers Deposit Bank in attracting new deposits. Therefore, to rely on the historic growth rate of deposits in the Farmers Deposit Bank is unrealistically conservative. On this point, we join with

the hearing officer who in his Finding of Fact states,

The appellant's deposit projections are based on growth in personal income, rather than the more common measure of growth of deposits in the county. But, use of such a measure is not unreasonable in light of the county's extraordinarily low penetration rate.

As for the accuracy of the proposed bank's projections on the amount of deposits, spread between asset return and costs of funds, and loan losses, these figures fall well within acceptable limits. As the comparative analysis of the bank investigator's report reveals, First State Bank of Irvington and Farmers Deposit Bank have closely similar performance percentages. Where the proposed bank's projections were found to be overly optimistic, i.e., loan losses and cost for computer services, they were adjusted with the result that the proposed bank's revised projections still showed a profit. Thus, based upon a review of arguments grounded in expert financial testimony we hold there to be substantial evidence of a reasonable assurance of a sufficient volume of business for the proposed bank to be successful. KRS 287.050(1).

With regard to the general testimony on demographic and economic conditions in Meade County, Farmers Deposit Bank argues that the county's agriculturally based economy and population growth are stagnant. What little growth there has been, it argues, is located in the eastern portion of the county, where most workers are commuters who bank outside Meade County at their place of business. In contrast to McGee's testimony regarding substantial population and personal income growth during the 1975–1980 period, Farmers Deposit Bank points out that during the most recent years unemployment in Meade County has increased while per capita income has actually decreased.

In response, we note that while population growth in the county may be currently stagnant, it is still projected to increase at a rate in excess of the state average

throughout the year 2000. Moreover, the population growth that has already occurred during the 1975–1980 period has resulted in a Meade County bank-to-customer ratio of 1-to-22,854. The state average is 1-to-3,300. Therefore, while population growth may have temporarily decreased, the size of the existing populace appears more than sufficient to support an additional bank. The concentration of that growth in eastern Meade County does not convince us otherwise. A review of the letters supporting the establishment of a new bank reveals that many Meade countians who are presently banking outside the county do so because of the lack of an alternative in Meade County. Their current banking habits are the result of necessity, not preference. Thus, the proposed bank's customers are not strictly limited to customers in the immediate Brandenburg area. The population growth in eastern Meade County is a fertile source of new customers for a bank willing to accommodate their needs. The recent increase in unemployment and concurrent decrease in per capita income in Meade County are simply not of sufficient magnitude nor duration to cause us to reject the assumptions and financial projections of the appellees. Both the expert financial testimony and general testimony on population and demographics support the conclusion of the lower court that a reasonable assurance of sufficient volume of business is supported by substantial evidence.

We turn now to the third element of the statutory criteria of KRS 287.050(1), public convenience and advantage. Lengthy discussion of this element of the statute is unnecessary as the record presents overwhelming evidence that public convenience and advantage will be promoted by opening the proposed bank. There is a definite need for increased banking hours in Meade County. The letters of many of the local merchants and citizens now banking outside the county indicate that their banking habits are the result of the inadequate service and hours of the Farmers Deposit Bank. Farmers failed experiment with Saturday banking hours, which ended in 1969, long before the influx of population in the mid-1970's, is more possibly a commentary upon the performance of Farmers than the desires of the banking populace of Meade County. The historic exodus of the citizens of Guston, Payneville, Ekron, Flaherty, and Muldraugh to banks outside Meade County indicates to us those individuals' dissatisfaction with the present banking services available. Several of the letters from citizens in outlying areas of Meade County reflect this view. In short, it is clear that a new bank with increased hours and Saturday banking would greatly service the public convenience and advantage.

## II.

Farmers Deposit Bank next argues that the ownership of the Tobins in the proposed bank contravenes KRS 287.030. This statute provides in pertinent part that no person who owns more than one half of the capital stock of one bank shall own or acquire directly or indirectly any capital stock in another bank. KRS 287.030.

At present the Tobins' individual stock ownership in the First State Bank of Irvington, in the aggregate, equals eighty percent (80%). They will together own sixty percent (60%) of the proposed bank, thirty percent (30%) each. Neither J.D. Tobin, Sr., nor J.D. Tobin, Jr., individually owns nor will own more than fifty percent (50%) in either bank. Farmers, however, argues that they should be considered as one person within the definition of that term in KRS 287.030. "Person" as defined by KRS 287.030 includes a natural person, partnership, corporation, association, business trust, voting trust, or similar organization. Nowhere on the face of the statute is there mentioned a father/son relationship, nor any familial relationship for that matter. From the wording of the statute it appears that the legislature had in mind only the formal, more traditional, legal relationships. Indeed, the Attorney General of Kentucky by long standing opinion, OAG 42–614, has expressed the view that the familial husband/wife relationship does not

fall within the scope of KRS 287.030. This same view has been the policy of the Department for many years. Had the legislature found fault with either the opinion of the Attorney General or the policy of the Department it has had ample opportunity to redirect them. The refusal of Kentucky legislators to modify the statute to include familial relationships is strong indication of their refusal to include such informal arrangements within the definition of "person". Thus, the opportunity for bank stock manipulation through family control appears to have been of little concern to the legislature. We are equally untroubled by such a possibility.

### III.

In its final argument, Farmers Deposit Bank maintains that, contrary to the requirements of *Williams v. Cumberland Valley National Bank*, Ky.App., 569 S.W.2d 711 (1978), the Commissioner failed to set forth adequate findings of significant or substantial changes since 1976, the year in which the Department denied an application for a new bank in Meade County. We disagree. Our review of the record and the hearing officer's findings reveals that in the seven years since 1976 the growth in population and personal income in Meade County has been exceptional, far above the state average. Furthermore, a completely different, highly qualified group of incorporators supports the present application. Nor does the appellant's stipulation of their qualifications remove them from consideration as a substantially changed circumstance. The hearing officer properly included them in the Findings of Fact. These changed conditions are more than sufficient to be termed substantial within the confines of *Williams, supra.*

The judgment of the Franklin Circuit Court is affirmed.

All concur.